IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | |
|---|---|
| James and Jody Renbarger, Elise Renbarger, and Carolyn Benjamin,<br><br>    Plaintiffs,<br><br>vs.<br><br>Zavanna, LLC, and Zenergy, Inc.<br><br>    Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:12-cv-00042 |

___

The above action is virtually identical to the one filed by a different family of mineral owners against the same defendants in Wold v. Zavanna, LLC, No. 4:12-cv-00043, 2013 WL 6858827, 2013 U.S. Dist. LEXIS 181631 (D.N.D. Dec. 31, 2013) ("Wold"). For the most part, the issues are the same, and both parties are represented by the same counsel.

Before the court is a motion for summary judgment filed by defendants (Doc. No. 15). Following the filing of the motion, the court held a hearing that it combined with the hearing on the same motion in Wold and allowed plaintiffs time to conduct additional discovery in both cases. The parties have since filed supplemental briefs and affidavits.

## I.   BACKGROUND

### A.   The subject leases

Plaintiffs have an ownership interest in the minerals in the following tracts of real property located in McKenzie County, North Dakota:

Township 152 North, Range 98 West
    Section 2: Lots 5-12
    Section 3: S/2S/2

1

        Section 4: NE/4SE/4
        Section 11: W/2NW/4, NW/4SW/4
        Section 30: NE/4SW/4, SE/4
        Section 31: N/2NE/4
        Section 32: N/2NW/4

(the "Subject Property"). On March 1, 2005, plaintiffs leased their mineral rights in the Subject Property to Diamond Resources, Inc. ("Diamond") by entering into one of three separate leases (leases or "Subject Leases"). Diamond subsequently assigned its interests in the leases to Zavanna. Zenergy later acquired an interest in certain of the leases.

The Subject Leases, which are all dated March 1, 2005, contain the following language in the habendum clause:

> If, at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises or on acreage pooled therewith but Lessee is then engaged in drilling or re-working operations thereon, then this lease shall continue in force so long as operations are being continuously prosecuted on the leased premises or on acreage pooled therewith ....

Also, relevant here is that the primary term of the leases expired at midnight March 1, 2010.[1]

### B. Uncontroverted evidence of the development activity before and after expiration of the primary term of the leases

No drilling occurred on the Subject Property prior to expiration of the primary term of the Subject Leases. However, Zenergy had engaged in the preliminary activity outlined in more detail below and began the drilling of the Pederson 10-3H Well (hereinafter the "Pederson Well") on March 26, 2010, with the well being completed in the first half of June 2010.

After careful consideration of the proffered evidentiary material, it cannot reasonably be disputed that the following activity took place:

---

[1] Plaintiffs claim the primary terms expired at midnight on February 28, 2010. However, for reasons explained in Wold, the court disagrees. Wold, 2013 WL 6858827, at *7 n.4.

**1.    Prior to expiration of the primary term at midnight March 1, 2010**

- Zenergy submitted an application for an expansion of the spacing unit and for authorization to drill a well on the Subject Property to the North Dakota Industrial Commission ("Industrial Commission") on or about November 16, 2009.

- Zenergy participated in a hearing before the Industrial Commission on its application on December 17, 2009.

- The Industrial Commission granted Zenergy's request for the creation of a spacing unit and for authorization to drill a well on the Subject Property on or about January 25, 2010.

- Uintah Engineering & Land Surveying, Zenergy's land surveyor, completed site-specific drawings for the layout of the Pederson Well and access road and had physically done at least some staking of the wellsite by January 20, 2010.

- Schlumberger Limited had prepared a site-specific, drilling profile proposal for Zenergy for the Pederson Well by February 22, 2010.

- Zenergy submitted to the Industrial Commission a Form 1H Application for Permit to Drill Horizontal Well for the Pederson Well On or about February 24, 2010. The Industrial Commission approved the application for a horizontal well and issued a permit on February 26, 2010.

- Trotter Construction, Inc. ("Trotter"), the construction contractor for the wellsite for the Pederson Well, hauled the first piece of equipment to the site on February 26, 2010, which was a D-8T Cat Dozer W/Blade & Ripper.

- From February 27 through March 1, 2010, Trotter prepared the Pederson Well site for the drilling rig by removing snow, ripping the surface, removing and piling topsoil, and beginning work on the lease road and approach.

    **2. After expiration of the primary term on March 1, 2010**

- From March 2 through March 15, 2010, Trotter continued to prepare the site for the Pederson Well by continuing to cut and level the surface, spreading scoria, digging a reserve pit, and installing a culvert. By March 18, 2010, the wellsite was 100% ready for the drilling rig.

- From March 18 through March 25, 2010, Zenergy's drilling contractor, Ensign US Drilling moved the drilling rig to the Pederson Well site, erected the drilling rig, and prepared to drill the Pederson Well.

- The Pederson Well was spud on March 26, 2010.

- Drilling and other completion operations continued more or less continuously and with reasonable dispatch until June 10, 2010, when oil and gas first began to flow from the Pederson Well. The Pederson Well has continuously produced oil or gas since its completion in June 2010.

    **C.   The delay of payment of royalty to plaintiff Elise Renbarger**

The following appears to be uncontroverted with respect to the claims by Elise Renbarger relating to the delay of payment of her royalty:

- The first sale of oil and gas from the Pederson Well was on June 10, 2010.

- On October 26, 2010, Jessica Winfrey, Division Order Analyst with Zenergy, sent a letter and division order that requested the owner's Social Security number or

Federal Tax Identification number for tax reporting to Elise V. Renbarger Life Estate, 4182 Hwy 1806 W, Watford City, North Dakota 58854. The letter and division order were returned to Zenergy, Inc. by the Postal Service with advice that the forwarding time had expired and that a new address was 705 4th Avenue NE, Apt. 4, Watford City, North Dakota 58854-7629. The contents of the envelope (the letter and division order) were mailed to the new address on November 2, 2010. The second mailing was not returned.

- The 150 day deadline for making payment of royalty without running the risk of having to pay "penalty interest" at the rate of 18% expired on or about November 7, 2010.

- At some point, Zenergy drilled the Ceynar 29-32H well on another unit in which Elise V. Renbarger had an interest. Again, a letter and division order requesting a tax identification number was sent and no response was received. When it became obvious to Zenergy that Ms. Renbarger was not going to provide her tax information as requested, Zenergy reviewed the public records to determine if it could confirm whether the social security number it had found was hers or her late husband's. The investigation determined the social security number was indeed hers rather than that of her late husband.

- On June 30, 2011, Zenergy sent a check to Elise V. Renbarger Life Estate for proceeds accrued through May 2011, and monthly checks have been sent since that time.

### D. Contentions of the parties

Plaintiffs contend that the Subject Leases expired because no drilling took place on the Subject Lands prior to the expiration of the primary term or, in the alternative, that the preliminary development activity was insufficient to hold the leases. They seek a judgment declaring that the Subject Leases are extinguished and of no further force and effect and monetary relief for the wrongful extraction of oil and gas after the claimed expiration of the leases.

In addition, plaintiff Elise Renbarger seeks a court order pursuant to N.D.C.C. § 47-16-39.1 for cancellation of the lease covering her mineral interest for the delay in payment of royalty by defendants. In the alternative, she seeks penalty interest and attorney's fees and costs pursuant to § 47-16-39.1.

In response, defendants contend that the development activity that took place prior to the end of the primary term followed by the drilling and completion of the Pederson Well, together, were sufficient to extend the Subject Leases under the lease language quoted earlier. Defendants also argue that the equities do not support cancellation of Elise Renbarger's lease and that she is not entitled to penalty interest.

## II. DISCUSSION

### A. Defendants' "drilling operations" extended the leases beyond the primary term

The facts of this case are *materially* indistinguishable from those in Anderson v. Hess Corp., 733 F. Supp. 2d 1100 (D.N.D. 2010), aff'd, 649 F.3d 891 (8th Cir. 2011) and now more recently in Wold. In this case, Zenergy had obtained all of the approvals necessary to commence drilling and had engaged in actual on-site construction activity preparatory to drilling that was more than *de minimis*. Further, Zenergy's capability and good faith intent to complete the well are evidenced by

the fact that it continuously prosecuted the work needed to complete the well with reasonable diligence after the primary term of the leases expired and, in fact, completed the well.

Consequently, the court concludes based on its prior holdings in Anderson and Wold that defendants' "drilling operations" extended the Subject Leases beyond their primary term and the court rejects plaintiffs' arguments to the contrary, including its arguments for why summary judgment is not appropriate.

### B. Elise Renbarger is not entitled to cancellation of the lease covering her interest on account of the delays in payment of royalty

Elise Renbarger seeks cancellation of the lease covering her mineral interest pursuant to N.D.C.C. § 47-16-39.1. The law governing the cancellation of lease pursuant to § 47-16-39.1 has recently been summarized by this court in Tank v. Burlington Resources Oil and Gas, Co., L.P., No. 4:10-cv-088, 2013 U.S. Dist. Lexis 99204, 2013 WL 3766526 (D.N.D. July 16, 2013).

The court concludes in this case that the overall equities do not support lease cancellation as being an appropriate remedy for the delay in payment of royalty to Elise Renbarger. The court reaches this conclusion based on: (1) the fact the delay was not unduly excessive; and (2) the lack of evidence suggesting defendants delayed making payment simply to take advantage of interest-free money or otherwise acted in bad faith. In fact, with respect to the later point, the evidence is to the contrary. Zenergy attempted to obtain the information it believed was necessary to process the payments. Further, of the named plaintiffs, only Elise Renbarger asserted claims for late payment of royalty, which suggests that the other mineral owners were paid on a timely basis. Finally, while the court reaches its decision based upon these two points, Ms. Renbarger's failure to respond to Zenergy's inquiries, even if she was under no legal obligation to do so, supports the court's decision when considering equities of the matter.

7

C.  **Elise Renbarger's claim for "penalty interest" for the untimely payment of lease royalty**

Defendants have failed to demonstrate that they are entitled to a dismissal of Elise Renbarger's alternative claim for penalty interest and attorney's fees and costs pursuant to N.D.C.C. § 47-16-39.1 on account of the untimely payment of royalty. The facts, which at this point appear to be undisputed, are that royalty was not paid to Elise Renbarger until well after the 150th day following the first marketing of oil and gas and that the reasons advanced by defendants for nonpayment likely do not fall within one of the "safe harbor" provisions of § 47-16-39.1 that provide an exemption to liability.

That being said, the court does not have sufficient information to determine the extent of defendants' liability for penalty interest. Also, since no cross-motion for summary judgment has been made with respect to this point, the court is reluctant to grant summary judgment with respect to this issue without first giving the parties notice that it intends to do so, which is what the court is doing now. See Fed R. Civ. P. 56(f).[2]

### III. CONCLUSION AND ORDER

Based on the foregoing, the court orders as follows:

1. Defendants' motion for summary judgment (Doc. No. 15) is **GRANTED IN PART** as follows:

   a. Plaintiffs' claims declaring the Subject Lease to have lapsed by their terms and for declaration that defendants have no further right, title, or interest in the Subject Property are **DISMISSED WITH PREJUDICE**.

---

[2] The court urges the parties to try to resolve the remaining issue of "penalty interest" as well as any request for attorney's fee and costs related to that claim, which, given the limited attention to the "penalty interest" claim in the briefing, are likely not very great.

    b.    Plaintiff Elise Renbarger's claim for cancellation of her lease pursuant to § 47-16-39.1 is **DISMISSED WITH PREJUDICE**.

Defendant's motion for summary judgement is **DENIED IN PART** as it relates to Elise Renbarger's claims for penalty interest and attorney's fees and costs.

2. Elise Renbarger shall file on or before January 17, 2014, a memorandum with the court that outlines more particularly her claim for "penalty interest" including her contentions regarding the amounts that are owed and how they are calculated. Defendants shall file a response on or before January 31, 2014, and plaintiff's reply shall be due on or before February 7, 2014.

3. Elise Renbarger shall file on or before January 17, 2014, the amounts that she is seeking in attorney's fees and costs (assuming she prevails on her claim for "penalty interest") in accordance with the requirements of Local Civil Rule 54.1 (including the filing of a verified statement of fees and expenses along with supporting documents). Absent further order from the court, any objections and alternative calculations shall be filed by defendants on or before January 31, 2014, and any reply on or before February 7, 2014.

**IT IS SO ORDERED.**

Dated this 3rd day of January, 2014.

                                                  */s/ Charles S. Miller, Jr.*
                                                  Charles S. Miller, Jr.
                                                  United States Magistrate Judge